**KLITZNER INDUSTRIES, INC. d/b/a The Historic Providence Mint**

v.

**H. K. JAMES & COMPANY, INC. d/b/a International Monetary Mint.**

**Civ. A. No. 82–1243.**

United States District Court, E. D. Pennsylvania.

April 1, 1982.

Jerome J. Shestack, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Hugh Scott, Marion Edwyn Harrison, Richard A. Gladstone, Barnett & Alagia, Washington, D. C., for plaintiff.

Robert W. Maris, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Klitzner Industries, Inc. d/b/a The Historic Providence Mint (HPM) has filed a motion for a preliminary injunction to enjoin the use of certain advertisements and the production and sale of a certain belt buckle by the defendant H. K. James & Company, Inc., a Pennsylvania corporation d/b/a International Monetary Mint (IMM), alleging that defendant is infringing plaintiff's copyrights and that the defendant's conduct constitutes unfair trade practices and unfair competition in violation of the Lanham Trademark Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Federal Trade Commission guidelines, 15 U.S.C. §§ 294–298 and the common law. A hearing was held concerning this motion on March 25, 1982. For the reasons set forth below, the Court will grant a preliminary injunction enjoining the infringement of plaintiff's copyrighted advertisements.

Plaintiff Klitzner Industries is a Rhode Island corporation with its principal place of business in Rhode Island. Defendant H. K. James and Company, Inc. is a Pennsylvania corporation with its principal place of business in Southampton, Pennsylvania. Both Klitzner Industries and H. K. James and Company, Inc. are involved in the mail order and/or direct mail marketing business. Klitzner Industries creates and manufactures "collectibles" which incorporate historic themes and markets these articles under the name Historic Providence Mint (HPM). H. K. James and Company, Inc.

also designs various collectibles and novelty items and employs outside companies to produce these items which are then marketed by H. K. James and Company, Inc. under the name International Monetary Mint (IMM), and various other names including the Southampton Mint.

In mid-June 1981, HPM conceived the idea of designing and marketing a belt buckle commemorating the adoption of the eagle for the Great Seal of the United States by the Continental Congress on June 20, 1782. Since reproduction and use of the Great Seal is prohibited by law, Klitzner employed one of its in-house artists to design a scene incorporating an eagle. The resultant work depicts an eagle in flight with outstretched wings and extended claws set against a background of mountains and clouds with a forest below. This illustration was then engraved on dies which were used to cast a solid sterling silver belt buckle highlighted with 24-carat gold electroplate. A copyright notice is stamped upon the rear of the buckle and a certificate of copyright registration describing the nature of the work as "Belt Buckle/precious metal collectible" was issued by the copyright office effective March 15, 1982 listing the year of creation as 1981 and the date of first publication as October 26, 1981. The first sales of the buckle were made to direct mail customers of Klitzner Industries, Inc./HPM in late October 1981.

In November 1981, William Schrenk, the managing director of HPM, prepared an advertisement to be used to promote and advertise the buckle. This advertisement contains copy authored by Mr. Schrenk describing the buckle and the historical occasion which inspired its creation and an illustration of the buckle. The advertisement was first published in the December 8, 1981 edition of the L.A. Times. Through an oversight on the part of HPM the advertisement in the L.A. Times appeared without a copyright notice. The advertisement subsequently appeared in the L.A. Times and other newspapers and periodicals such as the Wall Street Journal and the Christian Science Monitor with a copyright notice. A copyright registration effective March 22, 1982 was made for the advertisement in the name of HPM.

A second advertisement, also written by Mr. Schrenk, was placed by HPM in various magazines. The second advertisement, which is in color, bears an illustration of the buckle and contains copy which, although different in some respects from the first advertisement, describes the buckle and the historical occasion for its release. This color advertisement was first published in the February 1982 issue of Signature Magazine which went on sale on or about December 20, 1981. This advertisement also appeared in True West Magazine, American West Magazine, and the American Rifleman Magazine and is committed for future publication in several other publications such as the Smithsonian and National Geographic. Each of these advertisements contained a copyright notice; the copyright registration in the name of HPM was made for the second advertisement effective March 11, 1982.

In its advertisements HPM's buckle is described as a "limited edition buckle" struck in solid sterling silver accented with 24-carat gold electroplate. The limited edition nature of the buckle stems from the fact that the dies from which the buckle is cast will be destroyed in June 1982. The advertised price of the buckle is $185.00.

Sometime in February 1982, the Connecticut office of H. K. James and Company, Inc./IMM contacted Marvin Mankin, the Secretary-Treasurer of H. K. James/IMM at the H. K. James office in Southampton, Pennsylvania and told him they were going to do a belt buckle. Mankin was told that the Connecticut office would prepare the advertising for the buckle. About the same time, Harry Rosenbaum, a professional illustrator, was contacted to do an illustration for International Mail Marketing, another d/b/a of H. K. James and Company, Inc. Mr. Caruso, the art director for International Mail Marketing, told Mr. Rosenbaum the type and shape of illustration wanted—an eagle with mountains in the background and fields below—and gave

him a rough sketch of what he wanted. Mr. Rosenbaum was told that his illustration would be used on a belt buckle and in ads for the belt buckle. Mr. Rosenbaum then prepared his illustration from "scrap" drawings and illustrations of eagles and mountains which he had collected over the years and kept in his personal files. Mr. Rosenbaum did not see the HPM advertisement or the HPM buckle before completing his illustration. Mr. Caruso, however, told him that there was another eagle buckle being advertised and that he wanted to take another approach to it. After he had completed his black and white illustration of the eagle for IMM, Mr. Rosenbaum was shown a color advertisement for an eagle belt buckle. H. K. James and Company, Inc. then began publishing an advertisement bearing Mr. Rosenbaum's illustration in various publications. The advertisement promotes an "Official 200th Anniversary AMERICAN EAGLE COMMEMORATIVE BELT BUCKLE." The ad has appeared in two formats which are identical in text and content but vary in shape and layout. The advertisement states that the buckle is being offered by International Monetary Mint for the price of $19.95. The buckle is advertised as being "Plated with SOLID SILVER Layered with PURE 24–KARAT GOLD." The text and format of the advertisements otherwise closely resemble HPM's advertisements. H. K. James has also been publishing an advertisement identical in content and format to the IMM advertisement except that the stated price of the buckle is $9.95 and the seller is listed as Southampton Mint, another d/b/a of H. K. James and Company, Inc. The defendant's advertisements have appeared in publications such as the L.A. Times, the New York Daily News and the Christian Science Monitor and are presently scheduled for publication in various other publications across the country.

HPM first learned of the defendant's advertisements in early March, 1982. HPM has been receiving letters and telephone calls from members of the public concerning the defendant's advertisements.

## I. STANDARD FOR RELIEF

To obtain a preliminary injunction, the moving party must demonstrate (1) a reasonable probability of eventual success in the litigation, and (2) that the movant will be irreparably injured *pendente lite* if relief is not granted. While the burden rests upon the moving party to make the above two requisite showings, the district court must take into account whenever relevant (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. *Constructor's Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978); *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975). The district court has broad discretion since its task involves weighing the benefits and burdens that granting or denying the injunction will have on each of the parties and the public. *Penn Galvanizing Company v. Lukens Steel Co.*, 468 F.2d 1021, 1023 (3d Cir. 1972); *North Penn Oil and Tire Co. v. Phillips Petroleum Co.*, 358 F.Supp. 908, 919 (E.D.Pa.1973).

## II. REASONABLE PROBABILITY OF EVENTUAL SUCCESS IN THE LITIGATION

### A. *Copyright Infringement*

With respect to the issue of copyright infringement the Third Circuit has stated,

> To establish a copyright infringement, the holder must first prove that the defendant has copied the protected work and, second, that there is a substantial similarity between the two works. The criterion for the latter requirement is whether an ordinary lay observer would detect a substantial similarity between the works. *Ideal Toy Corporation v. Fab-Lu Ltd.*, 360 F.2d 1021 (2d Cir. 1966). Phrased in an alternative fashion, it must be shown that copying went so far as to constitute improper appropriation, the test being the response of the ordinary lay person. *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946). See also Nimmer on Copyright § 143.53 (1973 ed.).

*Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir. 1975), *cert. denied sub nom., Universal Athletic Sales Co. v. Pinchock*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); accord, *Custom Decor, Inc. v. Nautical Crafts, Inc.*, 502 F.Supp. 154, 156 (E.D.Pa.1980).

 It is not necessary that the plaintiff show direct evidence of copying the original to establish the element of copying in an infringement action. *Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.*, 575 F.2d 62, 64 (3d Cir. 1978), *cert. denied*, 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193 (1978); *Custom Decor, Inc. v. Nautical Crafts, Inc.*, 502 F.Supp. at 157. When direct evidence is lacking, circumstantial evidence of access to the protected work and substantial similarity between it and the alleged infringing work may create an inference of copying. *Franklin Mint v. National Wildlife Art Exchange, Inc.*, 575 F.2d at 64; *Custom Decor, Inc. v. Nautical Crafts, Inc.*, 502 F.Supp. at 157.

 Based on a comparison of HPM's and defendant's buckles and the evidence submitted at the preliminary injunction hearing the Court has determined that HPM has not demonstrated "a reasonable probability of eventual success in the litigation" in connection with its claim that the defendant, in manufacturing and selling its belt buckle, is infringing the copyright for HPM's buckle. The copyright laws do not protect ideas, only the *expression* of those ideas, and while the defendant's buckle is similar to HPM's buckle in that it incorporates the same scenic theme or idea—an eagle set against a backdrop of mountains, sky and clouds with a forest below—the defendant's depiction or expression of that scene is not substantially similar to that appearing on the HPM buckle. For instance: the angle of the eagle's body in relation to the viewer is different on each buckle, the defendant's eagle appearing more in profile than the HPM eagle; the position of the two birds' heads and the angle of their wings are markedly different; the placement and composition of the mountains are clearly distinguishable, as is

the depiction of the forest below, and; the relief appearing on the HPM buckle is finer in detail and shading. Even the buckles themselves are of different shape and design. In light of the many distinguishing features, there is little reason to believe that HPM will be able to establish the requisite elements of copying and substantial similarity.

Further doubt is case upon HPM's probability of eventual success on its infringement claim as to the buckle by the testimony adduced at the preliminary injunction hearing. With respect to the question of copying, the evidence submitted at the hearing showed that the artist who rendered the illustration used in the defendant's advertisements and on its buckle did not see a copy of HPM's advertisement prior to completing his own illustration. The evidence further showed that he prepared his illustration from scrap illustrations and pictures he had collected in the past and maintained in his personal file. Thus, the evidence presented at the preliminary injunction hearing shows only that the subject matter or idea of HPM's work was copied; the actual expression or rendition of the subject matter was Mr. Rosenbaum's own. Since the mere fact that the same subject matter may be present in two works does not prove copying or infringement, *Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.*, 575 F.2d 62, 65 (3d Cir. 1978), HPM has not shown a reasonable probability of eventual success in the litigation as to the infringement claim relating to its belt buckle.

We now consider HPM's infringement claim as it relates to HPM's advertisements. HPM submitted proof of copyright registration with respect to both its newspaper and magazine advertisements and the affixation of the required notice on its advertisements. Proof of a copyright registration creates a presumption as to the truth of the facts set forth therein and there was no evidence submitted which rebuts this presumption. Therefore, the question once again is whether HPM has shown a reasonable probability of eventual success in the litigation

on its infringement claim; the elements of this claim being proof of copying by the defendant and substantial similarity between the works.

There was no evidence presented at the preliminary injunction hearing relating to when, how and in what manner the defendant designed its advertisements other than the fact that the illustration used in the ad was prepared by Mr. Rosenbaum. However, as heretofore stated, evidence of copying may be inferred by proof of access to the protected work and substantial similarity between the two works. HPM established that both of its protected advertisements had been published together with the required notice before February 1982. Mr. Rosenbaum, the artist employed by the defendant, stated that Mr. Caruso, defendant's artistic director, had in his possession a color advertisement of an eagle belt buckle. The prior publication of HPM's advertisements in widely distributed publications together with Mr. Rosenbaum's testimony establish the requirement of access. *See Nimmer on Copyright* § 13.02[A] at 13–9 to 13–10 (1981).

■ Since the defendant had access to the protected advertisement, the question remains as to whether the defendant's advertisements are so substantially similar to the HPM advertisements as to create an inference that they were copied from the HPM advertisements. Judging from both the layout of the ads and the content of their copy, the Court has found that such substantial similarity exists between the defendant's advertisements and HPM's advertisements as to create the inference that the defendants copied the HPM advertisements. It would take too many pages to explain all the points of similarity; we will, however, set forth some of the more obvious ones. Essentially, the composition and visual appearance of the defendant's advertisements resemble the composition and visual appearance of HPM's magazine and newspaper advertisements. Illustrations of the respective buckles, order forms, topic headings, and the lines dividing the various portions of the advertisements all appear in

the same arrangement, giving the advertisements a substantially similar look. The text of the advertisements are also substantially similar, the text of the defendant's advertisement appearing to have been composed by following the entire text of HPM's magazine advertisement and then tacking on to it the latter portion of the text of HPM's December 8, 1981 newspaper advertisement. For example, the first two sentences of HPM's magazine advertisement read:

> THE AMERICAN EAGLE, our nation's symbol of strength, vigilance and freedom, was adopted as the Great Seal of the United States by the Continental Congress on June 20, 1782.
> Today the eagle continues to soar strong and free over the greatest nation the world has ever known.

The first two sentences of defendant's advertisements read:

> THE AMERICAN EAGLE, stirring symbol of our great nation's eternal vigilance in defense of freedom, was adopted by the Great Seal of the United States by the Continental Congress on June 20, 1782.
> Now 200 years later—the eagle continues to soar free and unfettered over the greatest bastion of freedom the world has ever known.

HPM's magazine advertisement contains the following sentences:

> To commemorate this important anniversary, our master engravers and minters have struck the soaring eagle in a Solid Sterling Silver belt buckle accented with 24 Karat Gold.
> The American Eagle buckle is a strictly limited edition available only until June 2, 1982, and then never again, as the hand engraved minting dies will be destroyed on that date.

In like manner, defendant's advertisement states:

> To commemorate the 200th Anniversary of this proud symbol of our country, International Monetary Mint master engravers and minters have struck a special, high-relief, limited edition collector's

buckle in silver plate, accented with a layer of pure, 24-karat gold.

It will be offered only during the commemorative year, after which time the dies will be permanently destroyed.

The remainder of the text of defendant's ad is very similar and appears to parallel the last half of the text of HPM's newspaper advertisement. For example, the HPM newspaper advertisement states:

Each buckle will be individually serial numbered on the back, along with the title, year issued, the sterling silver mark and the hallmark of The Historic Providence Mint.

Each buckle will be gift bound and be accompanied by a Certificate of Authority signed by the Director of the Mint. It's a piece you, your sons and grandsons will wear proudly for generations to come.

Defendant's advertisements read:

Each buckle will be individually numbered, and each original owner will be permanently registered in the Official Archives of the Mint.

Your buckle will be sent to you in a specially designed Collector's Presentation Case, and protected by our unusual Unlimited Money Back Guarantee.

The American Eagle Commemorative Buckle will be worn proudly by every patriotic American fortunate enough to possess one, and will be passed on as a proud heirloom to generations to come.

Defendant's advertisement continues to parallel the HPM ad by closing with a paragraph regarding the limited edition nature of the buckle and stating that the sooner it is ordered the lower the serial or registry number will be. This apparent sentence by sentence paralleling of the topics and expressions which appear in the HPM advertisements, together with the evident similarities in format, clearly indicate copying on the part of the defendant when considered in conjunction with the defendant's access to HPM's advertisements. Therefore, the Court determines that at this stage of the proceedings HPM has made a sufficient preliminary showing with respect to the issue of copying.

We turn now to the second element of copyright infringement, that of substantial similarity. Initially we note that a finding of similarity sufficient to support a finding of copying does not in and of itself require a finding of substantial similarity as that phrase is used in determining the issue of infringement. *See Universal Athletic Sales Co. v. Salked*, 511 F.2d 904, 907 (3d Cir. 1975). The criterion for determining whether there is such substantial similarity between the allegedly infringing work and the protected work as to constitute an appropriation of the work is whether an "ordinary lay observer" would find substantial similarity between the works. *Id.* at 907; *Custom Decor, Inc. v. Nautical Crafts, Inc.*, 502 F.Supp. 154, 157 (E.D.Pa.1980). We conclude that substantial similarity exists. In making this determination the Court recognizes that companies may manufacture similar products and that the similarity of the products may result in similarities in the description of those products in advertisements and marketing materials. However, the extensive similarities apparent in the instant advertisements extend beyond mere coincidental use of descriptive phrases. The defendant's advertisements are not only similar to the HPM advertisements in overall appearance and format but, as shown above, virtually track the text of HPM's advertisements from start to finish. Although there are certain dissimilarities in the illustration, language and lettering used in defendant's advertisements, verbatim copying of the protected work is not required to establish infringement or copying and the dissimilarities of defendant's advertisements are not significant in terms of the advertisement as a whole. *See* 3 *Nimmer on Copyright* § 13.03[A] at 13–16. In this case, the overall appearance, presentation, organization, language, and textual flow of the advertisements are substantially similar to the ordinary observer and evidence an appropriation of virtually the entire text and form of HPM's magazine advertisement and a substantial portion of HPM's newspaper advertisement.

Defendant asserts that the type of similarity which exists here is common in the advertising business and results from the necessary use of certain "buzz" words and phrases common to the industry. In support of this contention defendant submitted a collection of advertisements clipped from various publications advertising similar products. The Court notes, however, that an examination of the advertisements submitted by the defendant does not support its claim that the type and degree of similarity present in this case is attributable to the use of various "buzz" words commonly used in the mail order business.

In light of the substantial similarity which exists between the defendant's advertisements and HPM's advertisements, together with the evidence of access and copying, this Court has determined that HPM has shown a reasonable probability of eventual success in this litigation as to its claim of copyright infringement with respect to its advertisements.

Furthermore, since this Court has determined, for reasons hereinafter set forth in this memorandum, that HPM has shown that it will suffer irreparable injury *pendente lite* if relief is not granted, the Court will grant plaintiff's motion for a preliminary injunction in connection with the infringement by the defendant of the plaintiff's copyrighted advertisements.

### B. *Lanham Act Claim*

In light of the Court's determination to grant a preliminary injunction concerning the copyrighted advertisements, we shall hereinafter limit our consideration to plaintiff's remaining claims insofar as they pertain to plaintiff's request for a preliminary injunction enjoining defendant's manufacture and sale of its belt buckle. HPM has alleged that "Defendant has sold, transported or placed in interstate commerce goods which imitate or so nearly resemble goods of Plaintiff ... with intent to deceive the trade and public into confusing Plaintiff's and Defendant's products." and that "by its willful and deliberate misappropriation and copying of the property, skills and labors of Plaintiff, has engaged in acts that consti-

tute unfair competition in violation of 15 U.S.C. § 1125, common law, and the Unfair Trade Practices and Consumer Protection Law of Pennsylvania, 73 P.S. § 201–1 *et seq.*"

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) proscribes not only acts that would technically qualify as trademark infringement, but also unfair competitive practices involving actual or potential deception. *SK&F Co. v. Premo Pharmaceutical Laboratories, Inc.,* 625 F.2d 1055, 1065 (3d Cir. 1980). On its face, § 1125(a) prohibits the "false designation of origin" of a good sold in interstate commerce and the Third Circuit has held that the Lanham Act is broad enough to include the tort of unprivileged imitation; the imitation of any non-functional physical details of a competitor's product that have acquired a secondary meaning. *SK&F Co. v. Premo Pharmaceutical Laboratories, Inc.,* 625 F.2d at 1065.

In this action, the belt buckle manufactured by the defendant contains no mark or false identification which would imply that it was manufactured by HPM. To the extent HPM asserts that the alleged similarity in design alone will cause confusion as to the source of the buckle, this Court has already determined that the design appearing on the defendant's buckle is not substantially similar to that of HPM and, on the basis of the present record, appears to have been designed by Mr. Rosenbaum, an artist retained by the defendant, who had not seen the HPM illustration or buckle prior to creating his illustration for the defendant's buckle. In addition, we note that the present record does not contain evidence tending to establish that the HPM design has acquired a secondary meaning. For these reasons the Court has determined that HPM has failed to show a reasonable probability of success on its Lanham Act claims relating to the alleged copying of its buckle.

### C. *Pennsylvania Unfair Trade Practices and Consumer Protection Law and Unfair Competition*

HPM's claims which relate to the alleged copying of its buckle which are

based on the common law of unfair competition and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201–1 *et seq.* are apparently preempted under the *Sears-Compco* preemption doctrine. *See Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). As this Court stated in *Triangle Publications, Inc. v. Sports Eye, Inc.*, 415 F.Supp. 682, 683 (E.D.Pa.1976):

> The *Sears-Compco* decisions have been understood as holding that state regulation of unfair competition is preempted as to matters falling within the broad confines of the copyright clause of the United States Constitution.

. . . . .

In the instant case Congress has taken action to afford copyright protection to the paper [buckle] which plaintiff publishes [manufactures]. This is precisely the situation where the *Sears-Compco* preemption doctrine remains applicable [footnote omitted]. Otherwise, "a conflict would develop if a State attempted to protect that which Congress intended to be free from restraint or to free that which Congress had protected."

In addition, this Court notes, with respect to HPM's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, that even if this claim was not preempted under the *Sears-Compco* doctrine, under Pennsylvania law HPM would not have a private cause of action against the defendant under the Act since the Act limits private suits to consumers who have purchased goods for personal, family, or household purposes. 73 Pa.Stat.Ann. § 201–9.2; *see Permagrain Products v. U.S. Mat & Rubber Co.*, 489 F.Supp. 108, 111 (E.D.Pa.1980). We conclude, therefore, that plaintiff has not made the requisite showing of a reasonable likelihood of eventual success in this litigation on the aforementioned claim.

D. *Claims Authorized Pursuant to 15 U.S.C. § 298(b)*

Section 15 U.S.C. § 298(b) provides that

(b) Any competitor, customer, or competitor of a customer of any person in violation of section 294, 295, 296, or 297 of this title, or any subsequent purchaser of an article of merchandise which has been the subject of a violation of section 294, 295, 296, or 297 of this title, shall be entitled to injunctive relief restraining further violation of sections 294 to 300 of this title and may sue therefor in any district court of the United States in the district in which the defendant resides or has an agent, without respect to the amount in controversy, and shall recover damages and the cost of suit, including a reasonable attorney's fee.

§§ 294, 295, 296 and 297 set standards with respect to the gold and silver content of articles "having stamped, branded, engraved, or printed thereon or upon any tag, card, or label attached thereto, or upon any box, package, cover or wrapper in which said article is incased or inclosed, any mark or word indicating or designed or intended to indicate" the presence or fineness of gold or silver in the article. Our inspection of defendant's buckles submitted in evidence does not reveal any stamp, engraving, or mark whatsoever referring to the presence, quality or quantity of gold or silver, nor does the present record reveal any evidence of any tag, card, label, package, cover or wrapper being used to incase or inclose the buckle or which is being attached to the buckle, which makes a representation as to the presence, quality, or quantity of silver or gold in the buckle. Therefore, on the basis of the present record, this Court concludes that HPM has not displayed a reasonable probability of eventual success in this litigation on the merits of its claims asserted pursuant to 15 U.S.C. §§ 294–298.

III. IRREPARABLE HARM

Having determined that HPM has established, at this stage of the proceedings, a reasonable probability of eventual success in this litigation with respect to its claim of copyright infringement of its protected advertisements, we turn now to the question

of irreparable harm. Generally, in an action for copyright infringement a showing of likelihood of success on the merits raises a presumption of irreparable harm. *Custom Decor, Inc. v. Nautical Crafts, Inc.*, 502 F.Supp. 154, 157 (E.D.Pa.1980); *Triangle Publications, Inc. v. Sports Eye, Inc.*, 415 F.Supp. 682, 684 (E.D.Pa.1976); *American Metropolitan Enterprises, Inc. v. Warner Bros. Records*, 389 F.2d 903, 905 (2d Cir. 1968); *Judscott Handprints, Ltd. v. Washington Wallpaper Co.*, 377 F.Supp. 1372 (E.D.N.Y.1974). Other courts have stated the rule as being that if a prima facie case of infringement is made, the plaintiff is entitled to a preliminary injunction without a detailed showing of danger of irreparable harm. *Universal Athletic Sales Co. v. Salkeld*, 340 F.Supp. 899, 902 (W.D.Pa.1973); 3 *Nimmer on Copyrights* § 14.06[A] at 14–50 and cases cited therein at n. 16.

In the instant case HPM did not rely solely on the presumption of irreparable harm but offered evidence tending to show irreparable harm. William R. Schrenk, the managing director of HPM, testified that he has received complaints relating to the defendant's advertisements from individuals who attributed the advertisements to HPM or inferred some connection between the defendant and HPM. In addition, HPM presented the testimony of a Mr. Cochrine from Buffalo, New York who testified that he first saw the advertisement for HPM's $185.00 buckle in American Rifleman Magazine in early February 1982 and that he later saw the defendant's advertisement, under the name International Monetary Mint, for its $19.95 buckle and then saw the defendant's advertisement advertising its buckle for $9.95 under the name Southampton Mint. Mr. Cochrine testified that he assumed that all three advertisements and buckles came from the same place.

The above testimony shows that there is actual confusion resulting from the substantial similarity of the advertisements. As this Court stated in *Franklin Mint, Inc. v. Franklin Mint, Ltd.*, 331 F.Supp. 827, 830 (E.D.Pa.1971),

Even if defendant matches the high quality of plaintiff's products ... plaintiff is still entitled to have his reputation within his control. *Ambassador East, Inc. v. Orsatti, Inc.*, 257 F.2d 79, 82 (3d Cir. 1955). By depriving plaintiff of the ability to control the nature and quality of defendant's goods, defendant inflicts serious harm upon plaintiff ... *Even more serious is the probable damage to plaintiff's goodwill, an intangible value which can never accurately be ascertained* [citation omitted]. *Thus, plaintiff could never accurately be compensated for such loss.* [emphasis added].

We therefore conclude that HPM has satisfied the second requirement for a preliminary injunction, that is, that it will be irreparably injured *pendente lite* if relief is not granted.

## IV. PUBLIC INTEREST AND POTENTIAL HARM TO DEFENDANT

As heretofore stated, even where a plaintiff establishes a reasonable probability of eventual success in the litigation and irreparable injury *pendente lite* if relief is not granted, the district court has broad discretion in deciding whether an injunction should be issued since its task involves weighing the benefits and burdens that granting or denying the injunction will have on each of the parties and the public. *See Penn Galvanizing v. Lukens Steel Co.*, 468 F.2d 1021, 1023 (3d Cir. 1972); *North Penn Oil & Tire Co. v. Phillips Petroleum Co.*, 358 F.Supp. 908, 919 (E.D.Pa.1973). In this case, the balance of benefits and burdens falls squarely in favor of granting a preliminary injunction enjoining the defendant's advertisements.

In the instant case there appears to be no public interest considerations which would mitigate against issuing a preliminary injunction. *See Custom Decor, Inc. v. Nautical Crafts, Inc.*, 502 F.Supp. at 157. In fact, the opposite appears to be true. Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served

**1260**

by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.

With respect to defendant's assertion that any harm to the plaintiff is far outweighed by the harm it will suffer as a result of the issuance of a preliminary injunction, the Court notes that the preliminary injunction in this case concerns only the defendant's infringing advertisements. The preliminary injunction will not enjoin the defendant's manufacture and sale of its buckles. Furthermore, the defendant may continue to advertise its buckle to the public provided it changes its advertisements so as not to infringe HPM's copyrighted advertisements.

In light of the prima facie showing of infringement and the irreparable harm to the plaintiff, the defendant's evidence with respect to the harm it may suffer is a clearly insufficient reason upon which to deny preliminary injunctive relief in this case.

Accordingly, the Court will grant the motion of plaintiff, Klitzner Industries, Inc. d/b/a The Historic Providence Mint, for a preliminary injunction and will preliminarily enjoin the defendant from continuing to infringe the plaintiff's copyrighted advertisements.

### ORDER

AND NOW, this 1st day of April, 1982, upon consideration of the motion of plaintiff Klitzner Industries, Inc. d/b/a The Historic Providence Mint for a preliminary injunction, the Court having held a hearing and having considered the evidence, for the reasons set forth in this Court's Memorandum dated April 1, 1982.

IT IS ORDERED: The defendant, H. K. James and Company, Inc., its officers, agents, employees, successors, assigns and all persons in active concert or participation therewith, including but not limited to International Monetary Mint and Southampton Mint, are hereby restrained and enjoined pending the final determination of this action, or until further order of this Court, as follows:

1. From infringing, in any manner, the copyrighted advertisements of the plaintiff, Klitzner Industries, Inc. d/b/a The Historic Providence Mint relating to the sale of "The American Eagle Belt Buckle," as described in the Certificates of Copyright bearing the following registration numbers and effective dates of registration:

855–424—March 11, 1982

855–526—March 22, 1982

2. From continuing to publish, causing to be published, permitting to be published, distributing, placing or in any other manner using the advertisements relating to the "Official 200th Anniversary AMERICAN EAGLE COMMEMORATIVE BELT BUCKLE" which have heretofore been published, placed, used and/or distributed by the defendant.

3. To take immediate action to cancel, withdraw and discontinue the publication of advertisements relating to the "Official 200th Anniversary AMERICAN EAGLE COMMEMORATIVE BELT BUCKLE" which have heretofore been published, placed, used and/or distributed by the defendant.

IT IS FURTHER ORDERED: The plaintiff, Klitzner Industries, Inc., shall file with the Clerk of the Court the bond of an approved corporate surety in the amount of one hundred thousand dollars ($100,000.00) for the payment of such costs and damages as may be incurred and suffered by any party who is found to have been wrongfully enjoined or restrained.