**Julius C. MIGLIORI and Anthony Guglielmi**

v.

**Vincent CALISE, Alias, and Lincoln Gold, and Robert Barbato, Alias.**

**Civ. A. No. 90–0071P.**

United States District Court, D. Rhode Island.

Oct. 30, 1990.

Vincent A. Indeglia, Providence, R.I., for plaintiffs.

John F. Cicilline, Providence, R.I., for defendants.

MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This case arises out of an alleged sale of bar silver. Plaintiffs contend that the defendants misrepresented the quality of their merchandise and that instead of receiving valuable bar silver in exchange for the cash they tendered, they received as-

sorted silverware and trinkets. The plaintiffs' complaint alleges a cause of action under 15 U.S.C. § 291 *et seq.* ("The Gold Labeling Act") as well as pendant state law claims of breach of contract and fraud. Plaintiffs assert jurisdiction in this court under 28 U.S.C. § 1331 and 15 U.S.C. § 298. Defendant, Robert Barbato, now brings this motion to dismiss the action under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

A federal court has subject matter jurisdiction over a case under 28 U.S.C. § 1331 if the claimed "right or immunity ... [is] such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." *San Juan Legal Serv., Inc. v. Legal Serv. Corp.*, 655 F.2d 434, 437 (1st Cir.1981). However, the federal questions raised by the complaint must be neither "frivolous" nor "immaterial and made solely for the purpose of obtaining jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Even when, as in the instant case, a defendant contends that the plaintiffs' claim does not fall within the scope of a federal statute, unless the claim is "wholly insubstantial", *id.* at 682, 66 S.Ct. at 776, " 'the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief.' " *Meyer v. Amerada Hess Corp.*, 541 F.Supp. 321, 329 (D.N.J. 1982) (citing *Bell*, 327 U.S. at 682, 66 S.Ct. at 776). Because plaintiffs' federal claim raises issues regarding the interpretation of a federal statute, there is a sufficient federal question to retain jurisdiction. This said, however, a court may, *sua sponte*, even absent a motion to dismiss under Fed. R.Civ.P. 12(b)(6), note the insufficiency of a complaint and dismiss. *Literature, Inc. v. Quinn*, 482 F.2d 372, 374 (1st Cir.1973). The Court must, of course, give the plaintiff notice of the proposed dismissal and afford an opportunity to address the issue. *Id.* at 374.

Although the briefs on this motion have ostensibly discussed the question of subject matter jurisdiction, they have, in fact, fully argued the applicability of The Gold Labeling Act to the facts of this case. This Court may, therefore, examine the sufficiency of the complaint on its own initiative. Upon doing so, this Court finds that plaintiffs' claim arising under The Gold Labeling Act must be dismissed as a matter of law under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. When the federal claim is "dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." [1] *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Plaintiffs' state law claims are, therefore, dismissed without prejudice. The dismissal of the federal claim, however, is on the merits and, thereby, final.

### The Gold Labeling Act

For federal jurisdiction under 28 U.S.C. § 1331, plaintiff relies primarily on 15 U.S.C. §§ 296, 298. Section 296, in pertinent part, provides:

In the case of articles of merchandise made in whole or in part of silver ... the actual fineness of the silver or alloy thereof of which such article is wholly or partly composed shall not be less by more than four one-thousandth parts than the actual fineness indicated by any mark ... stamped, branded, engraved, or printed upon any part of such article, or upon any tag, card, or label attached thereto, or upon any box, package, cover, or wrapper in which such article is incased or inclosed; ... [nor] shall [any of

---

1. I should note here that the question of whether the plaintiffs' claim should fail for want of jurisdiction is a close one. "Lack of substantiality in a federal question may appear ... [when] it is obviously without merit." *Southpark Square Ltd. v. City of Jackson, Mississippi*, 565 F.2d 338, 342 (5th Cir.1977). With regard to the Gold Labeling Act, its private remedy has been available for twenty years and this Court has not been able to find a single case where plaintiffs have even attempted to use the act to seek damages for general tortious misrepresentations of the type alleged in this case. This Court, however, has determined that some interpretation is called for. A substantial federal question is thereby raised.

the above] be marked, stamped, branded, engraved, or printed with the word 'sterling' or 'sterling silver' or any colorable imitation thereof, unless such article or parts thereof purporting to be silver contains nine hundred and twenty-five one-thousandth parts pure silver. . . .

Section 298(b) states:

Any competitor, customer, or competitor of a customer of any person in violation of section 294, 295, 296, or 297 of this title, . . . shall be entitled to injunctive relief . . . and may sue therfor in any district court of the United States . . . and shall recover damages and the cost of suit, including a reasonable attorney's fee.

The plaintiffs urge that these sections encompass their cause of action for misrepresentation. Essentially, they contend that a written receipt given to them indicating that the metal they were to purchase contained 600 ounces of silver constituted a "tag, card, or label" within the meaning of the statute.

Pursuant to Fed.R.Civ.P. 12(b)(6), a complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibbons*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1975). The question must be resolved in the light most favorable to plaintiff with any doubt resolved in his behalf. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). Looking at the facts most favorably to the plaintiff and reviewing all of the legislative history of the above quoted federal statutes, this Court finds that as a matter of law plaintiffs have failed to state a claim under these federal statutes.

The statutes that plaintiff relies on are part of Chapter 8 of Title 15: Commerce and Trade. Chapter 8 is entitled, Falsely Stamped Gold or Silver or Goods Manufactured Therefrom. The statutes in question have been variously known as The National Gold and Silver Stamping Act of 1906 or The Gold Labeling Act of 1976. The purpose of the act is "to provide consumers with a degree of certainty in their purchases of manufactured articles of gold and of silver." 1976 U.S.Code Cong. and Admin. News 2865. To accomplish this goal, the "Act requires that articles of gold and silver which are *identified* by a carat mark or fineness guarantee meet certain standards." *Id.* (emphasis added). These standards require that an item purported to be "sterling," for instance, has to contain at least nine hundred and twenty-five one-thousandth parts pure silver with a divergence in fineness of four one-thousandth parts from the standard. 15 U.S.C. § 296.

In 1970, Congress amended the Act to create private causes of action for violations of the statute. Individual defendants "could recover damages which they may have suffered as a result of . . . false marking." 1970 U.S.Code Cong. and Admin. News 3592. This private cause of action was enacted "to protect the many ethical members of the jewelry industry from the unfair competition of those who are *mismarking* the quality of their merchandise" and "to help consumers receive full value for their purchasing dollars." *Id.* (emphasis added). In 1976, the Act was amended to decrease the tolerances allowed because technology had advanced to such a degree that it became feasible to achieve lower tolerances. Moreover, the amendment brought the United States requirements closer to those in effect in most of Europe. 1976 U.S.Code Cong. and Admin.News 2865.

This Court can find no evidence that the statutes were intended to create federal jurisdiction for general fraud claims regarding precious metals. Plaintiffs have provided no evidence for their contention beyond the bare words of the statute. For the foregoing reasons, this Court finds that the statute was intended only to create a specific cause of action under federal law for "marking" violations.[2]

---

**2.** Although plaintiffs urge that the statute encompasses their claim, they have presented no case law to support that contention. Instead, plaintiffs argue that under *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), this Court must examine the federal statute and de-

When called upon to interpret a statute, courts must first look to the words of the statute itself. If the words leave doubt as to the breadth of the statute, courts use the legislative history as an interpretive tool. Plaintiffs contend that a written receipt given to them prior to their purchase of the precious metals is a "tag, card, or label" within the meaning of the Act. This contention, however, is unsupported by the legislative history.

This Court's review of the legislative history of The Gold Labeling Act reveals that while the act is in part intended as a consumer protection statute, the protection afforded is very specific. It extends to areas of consumer protection that also impact on international trade and unfair competition. The implication is that Congress enacted this legislation out of a fear that international trade could be stifled if American manufacturers sell silver or gold products abroad that do not comply with established purity standards. With regard to domestic commerce, it appears that Congress was concerned with unfair competition. Without specific, enforceable "fineness" guidelines, manufacturers could undercut their competition and unfairly dominate the domestic market. Although Congress was concerned with purposeful misrepresentation, the overall impression from the legislative history is that Congress was more concerned with establishing guidelines that would ensure more expeditious commercial dealings.

Congress' intent is further revealed in the 1970 amendment creating private causes of action. Again, Congress wanted to protect consumers, but more specifically, Congress wanted to protect the jewelry industry from unfair competition. The fact that Section 298(b) specifically gives competitors and customers of competitors a cause of action under the statute provides more support for this Court's finding that The Gold Labeling Act was intended to address a very specific commercial problem.

Finally, the Act's language and various titles specifically refer to marks and stamps that are presumed to be embossed or at least attached to the subject item. There are no references to general types of misrepresentations, whether oral or in writing. Based on the legislative history of the Act and the statutory language, this Court concludes that Congress did not intend to create a federal cause of action for misrepresentation regarding precious metal unless that misrepresentation is "attached" to the subject item.

As far as case law is concerned, the statute, itself, is relatively obscure.[3] The

termine whether the statute creates an enforceable private right of action either expressly or impliedly. The classic factors to be considered when implying a remedy are set-out in *Cort*. They are 1) whether the plaintiff is one of the class for whose benefit the statute was enacted 2) whether there is any indication of legislative intent to create or deny such a remedy 3) would the implication of a remedy be consistent with the legislative scheme and 4) "is the cause of action one traditionally relegated to state law...." *Id.* at 78, 95 S.Ct. at 2087. In *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), the Supreme Court indicated that the focal point is Congress' intent in enacting the statute. *Id.* 422 U.S. at 78, 95 S.Ct. at 2087. "[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Id.* 108 S.Ct. at 516. Moreover, the Court stated that " 'we will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide.' " *Id.* 108 S.Ct. at 520 (citing *California*

*v. Sierra Club*, 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981)). Clearly, Congressional intent has become the primary determining factor. As discussed *infra* there appears to be no Congressional intent to provide remedies for misrepresentations that do not go directly to the physical marking of items. Moreover, simple fraudulent misrepresentation is "basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law[.]" *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088.

I have placed this discussion in a footnote because I wanted to address plaintiffs' argument even though I find that the *Cort* analysis is inapposite. Congress has provided a private cause of action under The Gold Labeling Act in Section 298. The plaintiffs here are not asking this Court to imply a remedy, rather they are asking this Court interpret the statute to include their claims.

**3.** In *Max. I. Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 830 (7th Cir.1984), the Seventh Circuit Court of Appeals refers to 15 U.S.C.

few cases that mention 15 U.S.C. § 291 *et seq* support this Court's view of the scope of the statute. In *Klitzner Industries, Inc. v. H.K. James & Co.*, 535 F.Supp. 1249 (E.D.Pa.1982), the court refused to grant an injunction based on these statutes because the plaintiff did not display any reasonable possibility of success. The plaintiffs had no possibility of success because, the court, on inspection of the subject items (belt buckles) said that the items revealed no "stamp, engraving, or mark whatsoever referring to the presence, quality or quantity of gold or silver, nor does the present record reveal any evidence of any tag, card, label, package, cover or wrapper being used to incase or inclose the buckle or which is attached to the buckle, which makes a representation as to the presence, quality or quantity of silver or gold in the buckle." *Id.* at 1258.[4] Physical proximity appears to be the key. A verbal or written misrepresentation that is not appended to the item does not fall within the statute. The implication is that Congress was concerned with physical markings because such markings are presumed to be accurate in the trade and are presumed to be regulated by law. Physical markings, thus, have more credibility than mere representations.

In *Deborah Leslie, Ltd. v. Rona, Inc.*, 630 F.Supp. 1250 (D.R.I.1986), this district considered whether there is a right to a jury trial under 15 U.S.C. § 291 *et seq*. In the course of that determination, the court noted that the disputed silver castings were alleged to be subject to the provisions of the Act because "although marked with the word 'sterling,' [they] failed to contain enough pure silver to warrant the defendants' use of that nomenclature." *Id.* at 1251. The court went on to parenthetically discuss the tolerances allowed under § 296. This case, like *Klitzner*, indicates that vio-

lations of the statute occur only when *marks* are inaccurate or fraudulent. Misrepresentation in the sense that it is claimed in the instant action, never comes into play. Moreover, the dearth of cases under this act is itself indicative of the fact that the statutes have not been interpreted as covering misrepresentations where "hallmarks" are not involved.

### Conclusion

Based on the language, legislative history, and case law regarding the Gold Labeling Act, this Court finds that the plaintiffs' federal claim must be dismissed under Fed. R.Civ.P. 12(b)(6). Plaintiffs have failed to present any evidence that would bring their claim within The Gold Labeling Act. Plaintiffs' state law claims in tort and contract are also dismissed, however their dismissal is without prejudice.

---

§ 298(c), (d) as "the obscure Jewelers' Hall–Mark Act."

**4.** In *Gemveto Jewelry Co., Inc. v. Jeff Cooper, Inc.*, 694 F.Supp. 1085 (S.D.N.Y.1988), the court, in an unfair competition case ordered the defendant to apply a trademark by the same means "as that used in applying the quality mark or stamp appearing thereon, in type or lettering at

least as large as that used in such quality mark or stamp and in a position as close as possible to that quality mark or stamp in accordance with 15 U.S.C. § 297(b)." *Id.* at 1093–94. This implication again is that the statute has been accepted as a "marking" statute and that the mark or label must be at least attached to the object.