**FISHER–PRICE TOYS, DIVISION OF the
QUAKER OATS COMPANY,
Plaintiff,**

v.

**MY–TOY CO., INC., Defendant.**

**No. 74 Civ. 4894–LFM.**

United States District Court,
S. D. New York.

Nov. 27, 1974.

Hopgood, Calimafde, Kalil, Blaustein & Lieberman, New York City, and Cumpston, Shaw & Stephens, Rochester, N. Y., for plaintiff; John M. Calimafde, Marvin N. Gordon, New York City, and George W. Shaw, Rochester, N. Y., of counsel.

Kirschstein, Kirschstein, Ottinger & Frank, P. C., New York City, for defendant; David B. Kirschstein and Peter T. Corbin, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Plaintiff seeks an injunction, damages and other relief in this action, alleging copyright infringement under 17 U.S.C. § 101 and a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). With the consent of the parties, a trial on the merits was advanced and consolidated with a preliminary injunction hearing, pursuant to Rule 65(a)(2), Fed.R.Civ.P. We consider now, however, solely the issues of liability and permanent injunctive relief. The propriety of the other relief sought by plaintiff will be determined in subsequent proceedings.

It appears from the testimony and exhibits received at trial that plaintiff has been in the business of manufacturing and selling toys for nearly forty-five years but until recently did not produce any dolls. In 1972, plaintiff determined that a market existed for simple dolls which would appeal to young children and their mothers and so began a research and development program which culminated in the manufacture of a line of six dolls. Four of these six dolls, namely, "Audrey," "Jenny," "Mary" and "Baby Ann," are the subject of this action.

Notice of copyright appears on each of plaintiff's dolls, and plaintiff has obtained a certificate of copyright registration for each doll as a work of art.[1]

Plaintiff claims that defendant is manufacturing and selling dolls which infringe its copyrights on the four dolls. Specifically, plaintiff contends that: defendant's "Barbara Ann" doll is a copy of "Audrey"; defendant's "Mary Jane" a copy of "Jenny"; defendant's "Jennifer" a copy of "Mary" and defendant's "Baby Beth" a copy of "Baby Ann."

The notice and certificate of copyright constitute prima facie evidence of the validity of plaintiff's copyrights, and it is defendant's burden to overcome this presumption.[2] Defendant, we find, has not met its burden.

Defendant took great pains at trial to demonstrate that many features incorporated in plaintiff's dolls were not novel, e. g., their soft, cuddly bodies; floppy arms and legs; dress; hands; feet and certain facial features. The test of copyrightability, however, is "originality, which refers to individuality of expression or independent creation and not to novelty in the subject matter."[3] The originality requirement is "little more than a prohibition against copying."[4]

---

1. The registration numbers are as follows: "Audrey"—GP 89510; "Baby Ann"—GP 89511; "Jenny"—GP 89513; and "Mary" —GP 89514.

2. 17 U.S.C. § 209; Flick-Reedy Corp. v. Hydro-Line Mfg. Co., 351 F.2d 546, 549 (7th Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301 (1966); Covington Fabrics Corp. v. Artel Products, Inc., 328 F.Supp. 202, 204 (S.D.N.Y.1968); United Merchants & Mfrs., Inc. v. K. Gimbel Accessories, Inc., 294 F.Supp. 151 (S.D.N.Y. 1968).

3. Consolidated Music Publishers, Inc. v. Hansen Publications, Inc., 339 F.Supp. 1161, 1162 (S.D.N.Y.1972). See Chamberlin v. Uris Sales Corp., 150 F.2d 512 (2d Cir. 1945); Pantone, Inc. v. A. I. Friedman, Inc., 294 F.Supp. 545, 548 (S.D.N.Y.1968).

4. Covington Fabrics Corp. v. Artel Products, Inc., supra, 328 F.Supp. at 204; Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99 (2d Cir. 1951).

■ Defendant has failed to demonstrate that plaintiff's dolls were copied from any others. That they contained features separately found on other dolls does not render their copyrights invalid. Rather, the original combination of these features into new dolls makes the dolls copyrightable.[5] Accordingly, we find that plaintiff has valid copyrights on the dolls in question.

We consider next whether defendant had access to plaintiff's copyrighted dolls. "Access is only an opportunity to copy."[6] It is undisputed that the dolls in question were advertised in trade journals and displayed at toy fairs in Canada and New York City in February 1974, prior to the development of defendant's dolls. Defendant, therefore, had access since it had an opportunity to copy plaintiff's dolls.

■ The test for infringement in a case such as this is whether an average lay observer would find a substantial similarity between the copyrighted work and the alleged copy.[7] In applying this test, we do not examine the dolls detail by detail, counting those details which, upon close inspection, appear similar. Rather, we look to the overall appearance of the dolls to see if the combination of these details creates a general impression of substantial similarity.[8]

■ An examination of the dolls compels the conclusion that the average lay observer would find substantial similarity between the dolls in each pair. While the following description of the dolls may be of some use, nothing short of visual inspection can convey the overall striking similarity between the dolls.

### "MARY" AND "JENNIFER"

Both dolls are of approximately the same overall size and shape, are stuffed so as to have a soft, cuddly appearance and feel, and have floppy arms and legs. They are both representations of blond-haired little girls appearing to be the same age, dressed in removable red and white checked gingham dresses with puffed sleeves. White aprons cover the front of each dress. Under each dress is a body suit or pajama outfit made of the same material as the dress, with white lace extending from the pants' leg. Both dolls also have simple vinyl hands, booty-like feet, and white fabric legs. Their vinyl faces are similar in appearance, each having widely-spaced round blue eyes, a small button-type nose, a dimpled smile and puffy red cheeks. Their heads are of the same size and shape.

The significant differences between the dolls are few. "Mary" has red bows in her hair and "Jennifer" has substituted a scarf of red checked gingham. "Mary's" feet are red and "Jennifer's" blue, and "Mary" has lace on the hem of her dress which is absent from "Jennifer's."

### "AUDREY" and "BARBARA ANN"

Both dolls have the same similarities as "Mary" and "Jennifer" with regard to size, shape and body and limb type. Both are representations of little girls

5. See generally, Peter Pan Fabrics, Inc. v. Dan River Mills, Inc., 295 F.Supp. 1366 (S.D.N.Y.), aff'd, 415 F.2d 1007 (2d Cir. 1969) ; Covington Fabrics Corp. v. Artel Products, Inc., *supra*.

6. Peter Pan Fabrics, Inc. v. Dan River Mills, Inc., *supra*, 295 F.Supp. at 1369; Blazon, Inc. v. Deluxe Game Corp., 268 F.Supp. 416, 422 (S.D.N.Y.1965) ; Detective Comics, Inc. v. Bruns Publications, Inc. 28 F.Supp. 399 (S.D.N.Y.1939), modified, 111 F.2d 432 (2d Cir. 1940) ; 2 M. Nimmer, Copyright § 142.1 (1973).

7. Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., 490 F.2d 1092, 1093 (2d Cir. 1974) ; Concord Fabrics, Inc. v. Marcus Bros. Textile Corp., 409 F.2d 1315, 1316 (2d Cir. 1969) ; Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.), 360 F.2d 1021 (2d Cir. 1966) ; Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2d Cir. 1960).

8. See Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.), *supra*, 360 F.2d at 1023 ; Peter Pan Fabrics, Inc. v. Martin Weiner Corp., *supra*, 274 F.2d at 489. See also, Ideal Toy Corp. v. Sayco Doll Corp., 302 F.2d 623, 627 (2d Cir. 1962) (dissenting opinion of Clark, J.).

appearing to be the same age, dressed in removable blue coveralls with wide cuffs, and each wears a patterned red shirt under the coveralls. The vinyl faces are similar to each other and to the other two dolls described as to eye color and shape, and nose, mouth and cheek structure.

Once again, defendant's doll differs from plaintiff's because she has a hat rather than bows in her hair, and she has different colored feet. Additionally, the color of the dolls' hair, legs and pant cuffs is different, as is the shade of blue in the coveralls and the pattern of the red shirt.

### "JENNY" AND "MARY JANE"

These dolls, too, have many of the same features in common with each other as the dolls already discussed. They are of similar size, shape, body and limb type, hair color, leg color and apparent age. Both have dresses very similarly cut, made from material with floral designs, and each dress is adorned with a sash. Under these removable dresses, each wears a jump suit or pajama-type outfit made from the same material as the dresses. Both the dresses and pants on each doll have white trim. The vinyl faces and heads are of the same general configuration, with similar noses, mouths, cheeks, smiles and freckles.

The significant differences between the two dolls are few. "Jenny" has bows in her hair, whereas "Mary Jane" is outfitted with a scarf, and the colors of their dresses, sashes and feet are different. The pattern of the dress material is also different, as is the cut of the trimming.

### "BABY ANN" AND "BABY BETH"

These two blond-haired, black-eyed baby dolls are, like the others, of the same approximate size, shape, body and limb type. Both are dressed in remov-

able puff-sleeved baby dresses, have booty-like red feet with white lace trimming and flesh-colored legs. Their vinyl faces are more detailed than the other dolls, as both have finely-sculptured noses with nostrils, and have mouths formed so as to give them pouting expressions. Each also wears a form-fitting removable diaper under her dress. The only significant difference between these two dolls is the color and pattern of their dresses.

It is apparent from an examination of the above-described dolls that the dolls in each pair are strikingly similar to each other. The differences, where they exist, are minor and appear to be the result of a calculated but thin attempt to disguise deliberate copying of plaintiff's dolls.[9] For example, some of defendant's dolls differed from plaintiff's with respect to hair color and head apparel, as well as fabric color and pattern. Yet, when observing the overall appearance of the dolls, resulting from the totality of the dominant features described above, the dolls give the general impression of similarity. We find that the average lay observer would find substantial similarity between the dolls in each pair.

Since plaintiff has established access and similarity, defendant must "come forward with credible evidence of independent creation to negative the inference of copying."[10]

Henry Garfinkel, an employee of defendant who was responsible for the development of the allegedly infringing dolls, and Martin Obsatz, a sculptor and designer of dolls, both testified to independent efforts in creating defendant's dolls. There is, however, no need to recount their testimony at length, since we find that defendant's dolls are so similar to plaintiff's dolls in such precise detail that the testimony of independent creation is incredible. No explanation other than copying is rea-

---

9. See Concord Fabrics, Inc. v. Marcus Bros. Textile Corp., *supra.*

10. Arrow Novelty Co. v. Enco Nat'l Corp., Docket No. 74 Civ. 1119 (S.D.N.Y. Oct. 30, 1974); 2 M. Nimmer, *supra,* at § 139.4.

sonably possible.[11] We emphasize that we examine these details not with a view toward finding substantial similarity, for that was determined from the general impression created by the dolls, but rather to demonstrate that mere chance did not account for the similarities.

The most remarkably similar detail on each pair of dolls is their eyes. On "Mary" and "Jennifer," the eyes are of the same shape and color, and the crescent dots used for highlighting are in the same locations. The eyelashes on "Mary" are painted in black above the eye only. There are five on each eye located in a two-two-one grouping. "Jennifer's" five eyelashes are also black and in precisely the same grouping as "Mary's."

The "Audrey" doll has the same head as the "Mary" doll, with the same eye color and configuration. All that differs is the hair. Defendant's "Barbara Ann" has the same head as "Jennifer," and likewise the same eyes. She, too, differs only with respect to her hair.

"Jenny's" head differs from those on the dolls just discussed; so does "Mary Jane's." Her eyes are not round but take on an oval appearance. So do "Mary Jane's." The highlighting in "Jenny's" eyes is different from the other dolls. The crescent is in a different location, as is the now singular dot. The same is true of "Mary Jane's" eyes. Finally, "Jenny's" eyes each have three brown lashes on the top of the eye and a fourth lash or highlight on the side. "Mary Jane's" are in exactly the same place.

The eyes on "Baby Ann" differ from those of all the other dolls. Their shape is different and the crescent has changed position and color. The highlighting dot is also in a different location. Each eye has seven black lashes on top and two on the bottom. The exact same thing is true of "Baby Beth's" eyes. Moreover, while the first three pairs of dolls have button noses with little detail and no nostrils, "Baby Ann" has a detailed nose with nostrils. So does "Baby Beth."

While this by no means covers all of the similar details which can be gleaned from a close inspection of the pairs of dolls in issue, it is sufficient to point up the incredibility of any claim that the similarity of the dolls is merely coincidental.

■ It is also worth noting that while plaintiff has a doll named "Jenny," defendant has one named "Jennifer"; plaintiff has "Baby Ann," defendant has "Barbara Ann"; plaintiff has "Mary," defendant has "Mary Jane"; and plaintiff has "Elizabeth" (not in issue in this action but one of the two other dolls rounding off plaintiff's line), defendant has "Baby Beth." The similarity of these names, although not paired with the similarly appearing dolls, further convinces us that the substantial similarity of dolls is not due to chance but to a deliberate tracking of plaintiff's line of dolls. Defendant undoubtedly copied plaintiff's dolls.

We find, therefore, that defendant infringed plaintiff's copyright on each doll in issue.

■ Plaintiff also alleges a violation of § 43(a) of the Lanham Act, 15 U.S. C. § 1125(a). It claims that the total effect of defendant's product and packaging tends to confuse the public as to the source of the dolls.

The similarity between the parties' packaging is not great. Defendant's box is larger than plaintiff's and is "K"-shaped, whereas plaintiff's is rectangular. Plaintiff's box has a vacuum-formed clear plastic front window which protrudes from the box, while defendant's front window is formed by a shrink wrap and is flush with the box's front. Plaintiff's package is blue and red, the predominant color being blue, while defendant's is red and white. The clear plastic window on both boxes allows the consumer to see the doll in a sitting posi-

11. See Rosen v. Loew's, Inc., 162 F.2d 785 (2d Cir. 1947); 2 M. Nimmer, *supra*, at § 141.2.

tion, but plaintiff's doll is displayed in front of a blue striped background while defendant's background is made up of red polka dots. Each package displays the name of the doll in a red circle on the clear plastic window. Finally, both packages have a series of pictures on the side which depict little girls in various poses with their dolls. While it is true that defendant's picture sequence parallels that of plaintiff's, its pictures are sketches while plaintiff's are photographs.

We find that the overall impressions left by the packages are sufficiently dissimilar to preclude any likelihood of confusion as to their source. This conclusion is reinforced when we note that plaintiff's package has "Fisher-Price" printed on it eighteen times in various places, including logos and text. We find no merit to plaintiff's Lanham Act claim of confusion as to source and, therefore, dismiss it.

Accordingly, we permanently enjoin defendant from further infringement of plaintiff's copyrights and order destruction of any infringing dolls still in defendant's possession, along with all molds and other means for manufacturing the infringing dolls. We further order that defendant make a diligent effort to recall all infringing dolls already distributed so that they, too, may be destroyed. A Special Master shall be appointed for the determination of damages, including attorneys' fees, pursuant to Rule 53, Fed.R.Civ.P.

The interlocutory judgment to be entered hereon shall empower and direct the Special Master, to be named by the court, to hear and report within sixty (60) days on the damages attributable to defendant's infringement of plaintiff's copyrights.

The foregoing opinion constitutes this court's findings of fact and conclusions of law, in accordance with Rule 52(a), Fed.R.Civ.P.

Settle interlocutory judgment, in accordance with this opinion, on notice within ten (10) days.