**ALBERT E. PRICE, INC.**

v.

**Mark METZNER, et al.**

**Civ. A. No. 83–3238.**

United States District Court,
E.D. Pennsylvania.

Aug. 15, 1983.

---

Michael P. Abbott, Siedel, Gonda & Goldhammer, P.C., Philadelphia, Pa., for plaintiff.

Michael R. Turoff, Arnstein, Gluck & Lehr, Chicago, Ill., Harry A. Short, Jr., Liebert, Short, FitzPatrick & Lavin, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Albert E. Price, Inc. ("Price") has brought this action alleging that defendants Mark Metzner, ("Metzner"), Mark Metzner, Inc. ("Metzner, Inc.") and Giftco, Inc. ("Giftco") infringed its copyrighted "Wood Duck Card Box", (U.S. Copyright Registration 119–996) marketed by Price under the name "Mallard Playing Card Set". Specifically, Price has alleged that Metzner and Giftco copied the Price product and sold their copy of the Price duck card set throughout the United States. On July 7, 1983, this Court entered a temporary restraining order forbidding Metzner and Giftco from further distributing and selling the duck card set. This temporary restraining order was extended by stipulation of the parties pending this Court's ruling on plaintiff's motion for a preliminary injunction. The hearing on the preliminary injunction motion was held before this Court on July 26, 1983. Based on the evidence presented at the hearing, this Court has determined, for the reasons hereinafter set forth, that plaintiffs are entitled to a preliminary injunction barring Metz-ner, Metzner, Inc., and Giftco from selling their versions of the duck card box.

*Facts*

Albert E. Price, Inc. is a New Jersey corporation which manufactures, distributes and sells giftware and other household items. One of Price's hottest selling products is the duck card box, upon which Price is the owner of record of U.S. Copyright Registration 119–996. Price began offering the duck card box for sale in March, 1982 and registered it for copyright in April, 1982. To date, Price has sold more than 130,000 of these items, at a price of between \$3.50–\$5.00 per item, to its customers. Price has yet to fill 340,000 outstanding orders for the duck card box.

The objects of this public buying frenzy and corporate competition are flat wooden boxes approximately six inches long and four inches wide and 2 inches deep. The top of each box is hinged and opens to reveal two compartments, each containing a set of playing cards. The backs of the playing cards show ducks in flight. Atop the lid of each box is a male mallard duck ("drake") in a still or "floating" position. The sculptures of the drakes atop the boxes is approximately 4 inches long, 1½ inches wide, and 2 inches high. The sides of the copyrighted Price box are slightly fluted. That is, the middle of the box's side walls comes to a slight point.

As heretofore noted, Price began selling its copyrighted duck card box in March, 1982. Its wholesale list price for the duck card box including the two decks of playing cards, was \$4.00 apiece. The duck card box was manufactured for Price in Taiwan. Price imports the item from the Taiwanese manufacturer and then solicits sales of the duck card box throughout the United States. Samples of the duck card box are distributed to potential retailers upon request. Price also advertises the duck card set in its catalog, which is distributed to potential customers and also exhibits the duck card box at various trade shows.

Price sells to catalog showrooms, mass merchandisers, fund-raising organizations, mail-order houses, and retailers.

Mark Metzner is a resident of Illinois and the president of Mark Metzner, Inc. He is the chief executive officer of this corporation and owns more than 50% of its stock. Metzner is also president of Giftco. He runs the daily operations of both companies. Essentially, Giftco is an importer of various consumer goods which are then marketed by Metzner, Inc. throughout the country. Metzner, Inc. and Price compete in substantially the same market. However, Metzner, Inc. has historically concentrated on sales to fund raising organizations. Metzner, Inc. currently has approximately 60% of the wholesale sales market for fundraising items. Mark Metzner, the individual, is intimately involved in the daily operations of both Metzner, Inc. and Giftco. He has the final say over all of the significant business decisions of both companies and also selects the advertising for Metzner, Inc.

During the Summer of 1982, Metzner was approached by a representative of Tania World Trading Corporation ("Tania"), a manufacturer of consumer goods located in Taipei, Taiwan. Tania showed Metzner a duck card box (Plaintiff's exhibit 15) obviously copied from Price's duck card box (Plaintiff's ex. 2). The Tania duck card box was even presented to Metzner in a packaging box which was almost an exact replica of the Price duck card box package except that the Price copyright insignia had been removed. Tania told Metzner that the duck card box was a big selling item for Price and suggested that Metzner begin importing this item for sale in the United States.

On December 21, 1982, Metzner sent a telex communication to Tania asking for a price quotation on the duck card box. Metzner specified that he "[m]ust have exact design as Albert Price." (plaintiff's ex. 25). On December 22, 1982, Metzner again telexed Tania, saying, "If exact design of Mallard Card set [duck card box] as Albert Price, send 12 pieces air parcel." (plaintiff's ex. 26). Metzner and Tania subsequently reached agreement and Metzner imported approximately 32,000 of the duck card boxes from Tania. These boxes, a sample of which was introduced at the hearing as Plaintiff's exhibit 2, were sold by Metzner during 1983 until the temporary restraining order was entered in this litigation. Almost 30,000 of these duck card boxes have been sold by Metzner in the United States. This Metzner, Inc. duck card box was exhibited by Metzner in January, 1983 at the "Greeting Card Show" in Miami, Florida and at the "Transworld Housewares and Variety Show," at the O'Hare Exposition Center near Chicago, Illinois. Metzner also exhibited this duck card box in February, 1983 at the "Party Plan Show" in New York. At each of these three trade shows, Metzner's salespersons solicited orders for this duck which Metzner, Inc. was selling for $2.75 apiece.

Price and its sales staff also attended the Chicago trade show and solicited orders for Price's copyrighted duck card box. Initially, Price offered the duck card box at $4.00 apiece. However, during the course of the show, Price representatives were approached by customers who told them that Metzner was selling the same product for a lower price. In response to these complaints, Price lowered the selling price of its duck card box to $3.50 apiece. Some Price customers refused to deal with Price unless Price matched the Metzner, Inc. price of $2.75. Metzner, Inc. has given heavy promotion to the duck card box in its catalogue and in special flyers which trumpet the hottest selling items in the catalogue. Metzner, Inc. has distributed these nationally to fundraising organizations and other customers, including such customers in Pennsylvania.

After the Chicago trade show, Price contacted its attorneys and wrote to Metzner and several other companies which were marketing duck playing card boxes which Price considered as infringing its copyrighted box. Price wrote such a letter to Metzner on March 30, 1983. Metzner did not cease using the duck card box as demanded by Price but did contact Tania and requested that the design of the Metzner duck card box be changed. Metzner telexed Tania on April 13, 1983, saying

Albert Price has sued us for duck playing card copyright violation. We will probably settle with them but meanwhile we need a nice new box designed that is different shaped (and different curves), perhaps a square in case they will not settle.

(plaintiff's ex. 29). At this point, Price had not brought suit against Metzner. This litigation was not formally commenced until July 7, 1983.

On April 19, 1983, Tania told Metzner that 25,000 duck card boxes had already been manufactured for Metzner and that Giftco was obligated to accept them since an irrevocable letter of credit was outstanding in favor of Tania. In an April 19 telex, Metzner wrote to Tania:

We can use existing ducks but change must be made quickly to new design.

\*     \*     \*     \*     \*     \*

Keep ducks coming, but as fast as possible change to our design. We are taking risk but think it will keep item alive.

(plaintiff's ex. 30). Metzner testified at the hearing that the word "risk" as used in the telex referred in part to Price's threatened suit against Metzner.

In late April, 1983, Tania submitted a redesigned duck card box to Giftco and Metzner, which was subsequently accepted by them for import and sale in the U.S. In early May, Metzner telexed Tania, telling them to begin production of the new duck card boxes. A sample of the redesigned duck card boxes was offered in evidence at the hearing (plaintiff's ex. 10). Tania began preparing to fill approximately 230,000 duck card box orders for Giftco. The second Metzner duck card box was being advertised by Metzner prior to the entry of the temporary restraining order in this case. At the hearing, the defendants represented to the Court that they no longer intend to market and sell the first Metzner duck card box but wished to continue to offer for sale the second Metzner duck card box. The defendants contend that the

second duck card box does not infringe Price's copyrighted duck card box.

Side-by-side comparison of the Price duck card box ("Price" box), the first Metzner duck card box ("Metzner I" box) and the second Metzner duck card box ("Metzner II" box) shows striking and remarkable similarity between the products. As heretofore noted, the Price duck card box is a low, flat wooden box with a fluted side that contains two decks of playing cards. The top lid of the box opens to reveal the playing cards. On top of the lid in the center of the box is a mallard drake in a floating position. The coloring of the drake, while not an exact replica of nature, is roughly that of an actual mallard drake.

The Metzner I box (plaintiff's ex. 2) is almost an exact replica of the Price duck card box (plaintiff's ex. 8). The Metzner I drake is slightly smaller and the coloring, particularly of the Mallard's head area, is slightly different. However, no ordinary observer, seeing the two products together, could fail to see the striking similarity of the two duck card boxes. The Metzner II box (plaintiff's ex. 10) is nearly as similar to the Price duck card box as is Metzner I. The sides of the Metzner II box are not fluted as are the sides of the Metzner I and Price boxes. The drake atop the lid of the Metzner II box is slightly larger than the Price drake and the Metzner I drake. The Metzner II drake also has slightly different coloring. The bill of the Metzner II drake is parallel to the lid of the card box rather than pointed down as is the bill of the Price drake and the bill of the Metzner I drake. Appendix A of this Memorandum presents a side-by-side photograph of these three duck card boxes.* Any ordinary observer viewing these three products would undoubtedly find them to be strikingly similar. Even in a side-by-side comparison, it is difficult to differentiate between them. The distinctions which can be made are all relatively minute. If an average person saw the Price duck card box set at a friends' house and then went shopping to purchase such a duck card box, he or she

* Appendix omitted from this publication.

would probably buy either the Metzner I, or the Metzner II duck card box and not realize that the duck card box which they had purchased was not the duck card box admired at the friend's house. The similarities between these items are not surprising in light of the studied efforts made by the defendants and Tania to copy the Price duck card box. As heretofore noted, the Metzner II duck is slightly larger than the Price drake and the Metzner I drake. The coloring of the Metzner II drake is also slightly different than that of the Price drake. These differences obviously are the result of the defendants and Tania trying to change the Metzner I duck card box in order to avoid copyright infringement. The Court finds, however, that both the Metzner II duck card box and the Metzner I duck card box are strikingly similar to the Price duck card box.

*The Legal Standard*

To obtain a preliminary injunction, the moving party must demonstrate (1) a reasonable probability of eventual success in the litigation; and (2) that the movant will be irreparably harmed pendente lite if relief is not granted. While the burden rests upon the moving party to make these two requisite showings, the district court must take into account whenever relevant (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest. *See Constructer's Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978); *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir.1975); *Klitzner Industries, Inc. v. H.K. James & Co.*, 535 F.Supp. 1249 (E.D.Pa.1982). In deciding a motion for a preliminary injunction, the district court has broad discretion since its task involves weighing the benefits and burdens that granting or denying the injunction will have on each of the interested persons and the public. *See Penn Galvanizing Company v. Lukens Steel Co.*, 468 F.2d 1021, 1023 (3d Cir.1972); *North Penn Oil and Tire Co. v. Phillips Petroleum Co.*, 358 F.Supp. 908, 919 (E.D.Pa.1973).

In order to sustain a claim for copyright infringement, plaintiff must show that its work is a validly copyrighted work and that the copyright is held by the plaintiff. *See Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F.Supp. 125, 138 (D.N.J. 1982); 3 M. Nimmer, *Copyright*, § 13.01(a) at 13–3 (1982 E ed.). The holder of the copyright must then prove that the defendant has copied the protected work and that there is substantial similarity between the two works. *See Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir. 1975), *cert. denied sub nom., Universal Athletic Sales Co. v. Pinchock*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). The criterion for determining whether there is substantial similarity is whether an ordinary lay observer would see a substantial similarity between the works. *Id.* at 907; *Ideal Toy Corporation v. Fab-Lu, Ltd.*, 360 F.2d 1021 (2d Cir.1966).

It is not necessary that the plaintiff show direct evidence of copying the original to establish the element of copying in an infringement action. *See Franklin Mint Corp. v. National Wildlife Art Exchange, Inc.*, 575 F.2d 62, 62 (3d Cir.1978), *cert. denied*, 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193. When direct evidence is lacking, circumstantial evidence of access to the protected work and substantial similarity between it and the alleged infringing work may create an inference of copying. *Id.* at 64. *See also, Klitzner, supra*, 535 F.Supp. at 1254; *Custom Decor, Inc. v. Nautical Crafts, Inc.*, 502 F.Supp. 154, 157 (E.D.Pa.1980).

Where two works are so strikingly similar so as to preclude the possibility of independent creation, direct proof of copying is unnecessary. *See Testa v. Janssen*, 492 F.Supp. 198, 202 (W.D.Pa.1980). As heretofore noted, the Price duck card box and the Metzner I and Metzner II duck card boxes are strikingly similar. Furthermore, this record is replete with evidence that the defendants in conjunction with their supplier Tania, affirmatively sought to copy the Price duck card box. When the defendants were informed that Price

viewed this as copyright infringement, they sought to vary the design of the Metzner I product ever so slightly in an attempt to copy Price without being held accountable under the copyright laws. Such activity does not insulate the defendants from the copyright laws but rather lends credence to the finding that the striking similarity between the duck card boxes resulted from a wrongful appropriation of the plaintiff's protected work. (*See Fisher-Price Toys v. My-Toy Co.*, 385 F.Supp. 218, 221 (S.D. N.Y., 1974)) *Fabrics, Inc. v. Marcus Bros. Textile Corp.*, 409 F.2d 1315, 1316 (2d Cir. 1960); *Scarves by Vera, Inc. v. United Merchants,* 173 F.Supp. 625, 627 (S.D.N.Y. 1959). The minor changes from Metzner I to Metzner II are but "the result of a calculated but thin attempt to disguise the deliberate copying" of the Price duck card box by the defendants. (*Fisher-Price Toys v. My-Toy Co., supra*, 385 F.Supp. at 221), *see also Nutt v. National Inst. Inc.*, 31 F.2d 236, 237 (2d Cir.1929).

■ As heretofore noted, Price is the holder of copyright certificate of registration No. 119–996 for the "Wood Duck Card Box". This certificate constitutes prima facie evidence of the validity of Price's copyright and of the facts stated in the certificate and copyright registration (*see* 17 U.S.C. Sec. 410(c); *William Electronics, Inc. v. Artic International, Inc.*, 685 F.2d 870, 873 (3d Cir.1982); *Broadcast Music, Inc. v. Moor-Law, Inc.*, 484 F.Supp. 357, 363 (D.Del.1980)). Works based on live animals and depicting live animals are copyrightable. *See Kamar International, Inc. v. Russ Berrie and Co.*, 657 F.2d 1059, 1061 (9th Cir.1981); *Rushton v. Vitale*, 218 F.2d 434, 435–36 (2d Cir.1955).

■ The defendants have not questioned the validity of the plaintiff's copyright. If they had, they would have the burden of overcoming the presumption of the validity of the Price copyright. *See William Electronics v. Artic International, supra*, 685 F.2d at 873. However, the defendants do contend that their products, the Metzner I and Metzner II duck card sets, are not infringements of the Price copyright. The

defendants contend that, were this Court to find infringement, it would accord Price protection of an idea rather than the expression of an idea. The expression of an idea is eminently copyrightable. *See Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d Cir.1976); *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 906 (3d Cir.1975); *Russell v. Trimfit, Inc.,* 428 F.Supp. 91, 93 (E.D.Pa.1977). The idea itself, however, is not copyrightable. *Id.* In this way, a copyright differs from a patent. *See Russell v. Trimfit, supra,* 428 F.Supp. at 93.

In this case, however, Price has not merely attempted to copyright the idea of decorating a playing card container with a duck. Rather, Price has copyrighted a very specific expression of that idea. The Price duck card box is a wooden, shellacked box just large enough to hold two sets of playing cards. The cards themselves are decorated with ducks in flight on the back. Atop of the lid of the box sits a particular type of duck (a Mallard drake) in a particular position (floating at rest). The lid opens length-wise for access to the playing cards. The box and drake are of a particular size, design and shape. The Price duck card box is therefore more than an idea, it is a specialized form of expressing an idea which was copyrighted by the Price corporation. As heretofore noted, the evidence presented at the hearing shows that the defendants knew of the particular Price product, were shown a blatant copy of the product, and instructed Tania to provide them with thousands of blatant copies so that they might profit from Price's expression of an idea. When the defendants were told that the Price duck card box was copyrighted and that litigation might ensue, the defendants knowingly sought to make only minor revisions in the Metzner I duck card box so that they might use the Metzner II duck card box, a box that remains strikingly similar to the Price duck card box, competing with the Price duck card box in the same market. The defendants' actions appear to this Court to be precisely the type

of behavior which the copyright laws were designed to prevent.

■■■ The defendants contend that they were not aware in the summer of 1982 that Price's duck card box was copyrighted when Tania first showed them a copy of the Price duck card box. Ignorance of the fact of copyright is no defense in a suit for copyright infringement where a defendant deliberately copies the copyrighted material. *See Knickerbocker Toy Co., Inc. v. Genie Toys, Inc.*, 491 F.Supp. 526, 529 (E.D.Mo.1980). Intent to violate the copyright law is not an element of copyright infringement. *See Costello Pub. Co. v. Rotelle*, 670 F.2d 1035, 1044 n. 13 (D.D.C. 1981).

The Court finds, nevertheless, on the basis of the evidence presented at the hearing, that the defendants learned from the letter of March 30, 1983 that the Price duck card box was copyrighted. On March 30, as heretofore noted, Price wrote to Metzner and threatened legal action if the defendants continued their copyright infringement. Metzner, according to his own testimony at the hearing, did not contact legal counsel to determine the validity of Price's claims. The defendants continued to market the Metzner I duck card set, a product clearly infringing the Price duck card set, until the temporary restraining order was entered by this Court.

As previously noted, the defendants do not intend to market the Metzner I duck card box (of which only 2,000 items remain in stock) but wish to market the Metzner II duck card box which is also strikingly similar to the copyrighted Price duck card box.

For the reasons heretofore set forth, it is clear the plaintiff Price has established a likelihood of success on the merits in its suit against the defendants for copyright infringement. Thus, the first criteria for the entry of preliminary injunction has been satisfied. This Court also finds that Price has shown that it will be irreparably harmed pendente lite if the requested preliminary injunction is not granted, thereby satisfying the second criteria for the granting of such an injunction.

In copyright infringement cases, many courts have determined that once plaintiff has made a prima facie showing of infringement of a valid copyright, a presumption of irreparable harm attaches from the fact of infringement and the plaintiff is entitled to a preliminary injunction without a detailed showing of irreparable harm. This view has been adopted by the Courts of Appeals in the Second Circuit (*e.g., Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977), *cert. denied* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978)) and the Seventh Circuit (*see e.g., Atari, Inc. v. North American Phillips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir.1982)). This view has also been approved by courts of this district, (*see, e.g., Midway v. Bandai America*, 546 F.Supp. 125 (E.D.Pa.1982); *Custom Decor, Inc. v. Nautical Crafts, Inc.*, 502 F.Supp. 154, 157 (E.D.Pa.1980). *Triangle Publications, Inc. v. Sports Eye, Inc.*, 415 F.Supp. 682, 684 (E.D.Pa.1976) and by this Court (*see Klitzner Industries, Inc. v. H.K. James & Co.*, 535 F.Supp. 1249, 1259 (E.D.Pa.1982). Although our attention has not been called to any Third Circuit decision specifically holding that in cases involving copyright infringement a presumption of irreparable harm attaches to a showing of infringement, the Court of Appeals has permitted under some circumstances a sufficient showing of likelihood of success on the merits to suffice to permit the issuance of a preliminary injunction in copyright cases. *See Kontes Glass Co. v. Lab Glass, Inc.*, 373 F.2d 319, 320–21 (3d Cir.1967). *See also Virgin Islands v. Islands Paving, Inc.*, 714 F.2d 283 (1983) at 285 (showing of statutory violation will in some cases permit entry of injunction without specific showing of irreparable harm). The evidence presented at the hearing, however, showed that the plaintiff will be irreparably harmed if preliminary injunction is not granted.

■■■ As heretofore noted, the party seeking a preliminary injunction bears the burden of showing that it will be irreparably harmed pendente lite if an injunction is

not issued. *See Continental Group, Inc. v. Amoco Chemical Corp.*, 614 F.2d 351, 359 (3d Cir.1980); *Oburn v. Shapp*, 521 F.2d 142, 151 (3d Cir.1975). The general rule in equity is that harm is "irreparable" when it cannot be adequately compensated in damages because of the nature of the injury itself or because of the nature of the right or property that is injured or because there exists no certain pecuniary standard for measurement of damages. *See Luckenbach S.S. Co. v. Norton*, 21 F.Supp. 707 (E.D.Pa.1937). Courts have also described irreparable injury as "substantial injury to a material degree coupled with the inadequacy of money damages." *Tully v. Mott Supermarkets, Inc.*, 337 F.Supp. 834, 850 (D.N.J.1972), *accord Judice's Sunshine Pontiac, Inc. v. General Motors*, 418 F.Supp. 1212 (D.N.J.1976). Future injury of uncertain date and incalculable magnitude is "irreparable harm" and protection from such an injury is a legitimate end of injunctive relief. *See Phillips v. Crown Central Petroleum Corp.*, 602 F.2d 616 (4th Cir.), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1021, 62 L.Ed.2d 756 (1979). Based on the evidence presented at the hearing, this Court has determined that Price has shown that it will be irreparably harmed if an injunction is not entered. This irreparable harm would result from the serious, long-lasting, and incalculable harm to Price's competitive position vis-a-vis the defendants if the defendants were allowed to continue marketing their infringing duck card boxes.

The copyrighted duck card box has been a good-selling product for Price but competition from the infringing Metzner I duck has cut into Price's sales and will further cut into Price's sales if defendants are permitted to continue selling either the Metzner I or the Metzner II duck card box. The defendants have sold more than 30,000 of the Metzner I duck card boxes and have orders for thousands more duck card boxes which they intend to fill with the Metzner II duck card box. Metzner, Inc. is offering its infringing duck card box at $2.75 apiece while Price has cut its list price in order to compete with Metzner, Inc. to $3.50 after originally offering the box for $4.00. The Court finds, however, that the Price box and Metzner boxes are not of equal quality. As noted earlier, the Price box appears to be better made, has larger and more solid hinges, and appears to contain better quality playing cards. The craftwork of the Price box also appears superior to the Metzner I and Metzner II boxes. (*See* plaintiff's ex. 19, defendant's telex to Tania complaining of poor quality of infringing duck card boxes). However, the substantial similarity of the appearance of the boxes will make it appear to some potential purchasers that Price is overcharging its customers since the Price box has a higher wholesale price than the Metzner boxes.

Furthermore, Price and the defendants compete with each other in the same customer markets. If the defendants are permitted to continue selling their infringing duck card boxes, bearing in mind the thousands of orders which they had on hand, and the sales networks which they control, they would be in a position to saturate the consumer market with their duck card boxes and deprive the copyright holder, Price, of its opportunity to profit from the sale of its copyrighted duck card box and to establish itself in this market.

During the next few months, there will be trade shows in this industry. If a preliminary injunction is not entered, the defendants will be able to present their duck card boxes to this segment of the commercial world and refer to the duck card boxes as the defendants' creation when in fact the duck card box is the copyrighted creation of plaintiff Price. If an injunction does not issue, Price will be denied the reputational acclaim and commercial benefit which it should receive in connection with developing this popular product. Direct competition (*see Grolier, Inc. v. Educational Reading Aids Corp.*, 417 F.Supp. 665, 668 (S.D.N.Y.1976)) and selling price disparity (*see Judscott Handprints, Ltd. v. Washington Wall Paper Co.*, 377 F.Supp. 1372, 1380 (E.D.N.Y.1974)) between plaintiff and defendant have been found to warrant preliminary equitable relief in copy-

right infringement situations. Furthermore, there exists in this case a substantial risk that the public will be confused as to the source of origin of the duck card boxes since they are so strikingly similar. Such confusion because of copyright infringement could deprive plaintiff Price of the capacity to control its own reputation and thereby cause further irreparable injury to Price since the infringing Metzner I and Metzner II ducks are less well made than the Price duck card set. *See Midway Manufacturing Co. v. Bandai-America, Inc.,* 546 F.Supp. 125, 154 (E.D.Pa.1982); *Klitzner Industries v. H.K. James & Co.,* 535 F.Supp. 1249, 1259 (E.D.Pa.1980).

A recent case from this court provides by analogy an illustration of the need for equitable relief in this case. In *Customer Decor, Inc. v. Nautical Crafts, Inc.,* 502 F.Supp. 154, 157 (E.D.Pa.1980), the defendant was preliminarily enjoined from distributing infringing copies of copyrighted brass giftware, which was offered for sale at $65 while plaintiff's copyrighted item sold for $85. This 23.5% price difference is less than that found in this case where the defendants' infringing ducks are offered for a wholesale price 43.7% lower than the wholesale price of plaintiff's copyrighted article. In *Custom Decor,* the court observed

> Without this court's immediate intervention plaintiff would not be able to maintain its competitive position in the industry and more important it would likely suffer the types of losses that are impossible to compute with any precision.

502 F.Supp. at 157. The *Custom Decor* rationale for granting a preliminary injunction is equally applicable in this case and may in fact be stronger since Metzner, Inc. currently holds a far larger market share than Price. Thus, Metzner may be able to utilize its greater size, resources, and market share to greatly harm Price's competitive position in this market. The damage that Price will suffer if an injunction does not issue includes more than the mere monetary value of lost sales of its duck card box. Furthermore, the amount of damages necessary to compensate Price for these lost sales will be impossible to calculate accurately.

This Court, having found that plaintiff has established a likelihood of success on the merits and a showing of irreparable harm, must now weigh the impact of a preliminary injunction on other interested parties and the public. While other manufacturers may also be copying the Price duck card set (*see* plaintiffs exhibits 36 through 40), and would be inhibited from continuing such activity in the wake of a preliminary injunction, this concern does not militate against the grant of equitable relief to the rightful copyright holder, Price. Similarly, any financial losses suffered by the defendants due to such relief will not deter the court. The defendants have no right to anticipate continued profits from their deliberate plagiarizing of the Price duck card box. *See Atari, Inc. v. North American Phillips Consumer Electronics Corp.,* 672 F.2d 607, 620 (7th Cir. 1982).

Similarly, the public interest does not weigh against the grant of the preliminary injunction. In fact, the weight of the public interest is in favor of such relief. As this Court noted in *Klitzner v. James, supra,*

> Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.

535 F.Supp. at 1259–60.

For the reasons heretofore set forth, the plaintiffs are entitled to an injunction preventing the defendants from importing and selling the infringing products. An appropriate Order will be accordingly entered.

### ORDER

AND NOW, this 5th day of August, 1983, upon consideration of plaintiff Albert E. Price, Inc.'s motion for a preliminary

objection and defendants' response thereto, a hearing having been held before this Court on July 26, 1983, for the reasons set forth in this Court's Memorandum of August 15th, 1983,

IT IS HEREBY ORDERED that

1. Plaintiff Albert E. Price, Inc's Motion for a Preliminary Injunction is GRANTED;

2. Defendants Mark Metzner, Mark Metzner, Inc., and Giftco, Inc., their officers, agents, servants, employees, attorneys, assigns, and all persons acting in active concert or participation with them are hereby restrained and ENJOINED pending the final determination of this action or until further order of this Court, as follows:

1. From infringing, in any manner, Price's copyright rights in U.S. Copyright Registration No. 119–996 for "Wood Duck Card Box" and from manufacturing infringing copies of Price's said copyrighted work including goods, catalogs, catalog sheets, advertisement, photographs and other publications containing infringing copies of Price's copyrighted work;

2. Manufacturing, publishing, importing, selling or otherwise distributing their infringing Duck Sets sold under the name "Duck Playing Card Set" and photographed in Exhibit C (referred to in this Court's Memorandum of August 15th, 1983 as the Metzner I duck card box) and Exhibit H (referred to in this Court's Memorandum of August 15th, 1983 as the Metzner II duck card box) of plaintiff's complaint,

3. Offering to sell, soliciting orders for, displaying, exhibiting, and performing other activities related to solicitation of customer orders for their infringing Duck Sets which are sold under the name "Duck Playing Card Set" and photographed in Complaint Exhibits C and H, or any other containers of playing cards embodying or including a mallard duck substantially similar to Price's copyrighted work.

It is further ORDERED:

4. Plaintiff Albert E. Price, Inc. shall post with the Clerk of Court the bond of an approved corporate surety in the sum of $50,000 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongly injured or restrained hereby.